State v. Blake

No error.

Judges BECTON and PHILLIPS concur.

STATE OF NORTH CAROLINA v. OLLIE LEWIS BLAKE

No. 8614SC386

(Filed 21 October 1986)

1. **Homicide § 15— deceased's fear of defendant—hearsay testimony—evidence not prejudicial**

    Even if the trial court in a homicide case erred in admitting hearsay testimony by a friend of decedent and by a police officer that decedent, on the night of his death, told them that he was afraid of defendant, defendant was not prejudiced thereby since there was overwhelming evidence of the ill will which existed between decedent and defendant.

2. **Homicide § 20— tape recording—admission not prejudicial**

    Even if the trial court in a homicide case erred in admitting into evidence a tape recording of telephone calls made to the 911 emergency number, defendant was not prejudiced thereby, since the recording tended to show only that decedent's house was being broken into, shots were fired, and someone was dead at a named location, but no one was accused or implicated in the recording as being the perpetrator and defendant was in no way mentioned as being involved.

3. **Homicide § 21.7— second degree murder—sufficiency of evidence**

    Evidence was sufficient to support a verdict of second degree murder where it tended to show that defendant argued with decedent and threatened him; on that same night a witness saw defendant's car pull up and park near decedent's home and his wife saw the driver, who had long blond hair and was wearing a dark tee-shirt, get out of the car and walk toward decedent's home just minutes before decedent was killed; another neighbor heard shots fired and saw a man on decedent's back steps; another neighbor also heard the shots and saw a long-haired man running beside decedent's home; decedent ran from his house to the street where he collapsed, dying from a bullet wound; after decedent collapsed, the car did a three-point road turn and left hastily; later that night a deputy sheriff picked up defendant who was standing beside his car; and at the time defendant had shoulder-length dark blond or light brown hair and was wearing a dark tee-shirt.

4. **Criminal Law § 138.14— presumptive sentence—aggravating and mitigating factors not required**

    Since defendant was given the presumptive sentence, the trial court was not required to make findings in aggravation and mitigation.

    Judge ORR dissenting.

APPEAL by defendant from *Ellis, Judge*. Judgment entered 22 November 1985 in Superior Court, DURHAM County. Heard in the Court of Appeals 17 September 1986.

Defendant was charged in a proper bill of indictment with the murder of Douglas McLamb. At defendant's first trial the judge entered an order declaring a mistrial. At the second trial the jury convicted defendant of second degree murder. At trial, the State presented evidence tending to show the following: Between 6:30 and 7:00 p.m. on 20 October 1984 Douglas McLamb, the deceased, returned from work to find his wife, Linda, babysitting with her niece. McLamb became angry when Linda's sister, Debra Johnson, failed to pick up her daughter at the designated time. Shortly thereafter Debra arrived, accompanied by defendant, her boyfriend, in defendant's black El Camino. Doug McLamb and defendant began arguing. McLamb got his rifle and fired a shot as defendant, Debra and her daughter, Angel, were driving away. One bullet struck the lower frame of the rear window of the El Camino. Debra stopped the vehicle at a nearby convenience store and called the police. Defendant walked back down the street, and he and McLamb began arguing again. A policeman arrived at the scene and defendant tried to talk the policeman out of arresting McLamb. After defendant heard that a bullet struck the El Camino he stopped trying to help McLamb and told him, "If the bullet hit the car that is your ass." McLamb was arrested and taken to the magistrate's office. McLamb's rifle was taken into custody and held for evidence. A policeman testified that on the way downtown McLamb stated that he was afraid of defendant especially now since he had no gun to defend himself. After McLamb's release, his best friend and neighbor, Ricky New, picked up McLamb at the courthouse at about 9:40 p.m. New testified that on the way home McLamb expressed his fear of defendant and his fear that defendant would come back to harm him. New dropped McLamb off at McLamb's home at 915 Washington Street. New testified that about 10 or 15 minutes later he and his wife were watching television when a car with "sort of loud mufflers" pulled up in front of his house and parked across the street. New said he "just got up to see who it was and it was Lewis Blake's car." New telephoned McLamb but the number was busy so he left by the back door to warn him. He heard two loud noises which sounded like gunshots, then saw McLamb come out

State v. Blake

the front door and run to the street. New heard another loud noise and saw McLamb collapse in the street. New called the police to report what had happened. New's wife, Melissa, testified that she had seen the El Camino drive up at about 10:00 p.m. and that there appeared to be two people inside. The El Camino was parked about two houses away from the deceased's home. Melissa New saw an average-sized man with long blond hair, wearing a dark tee-shirt and faded jeans or light gray corduroys, get out of the driver's seat and walk down the street in the direction of McLamb's house. She did not see where the driver went. Mrs. New could not identify defendant as being the man she saw. She also heard a loud noise as the deceased ran and fell in the street. Both she and her husband testified that the black El Camino did a three-point road turn and left hastily after McLamb collapsed.

Another neighbor, Mrs. Mazelle Peninger, testified that while on her back porch she thought she heard a shot and saw an un-identified individual on the back stairs of McLamb's house. Her back porch faces the McLamb's back door at an angle. She could not describe what type clothing the person had on or whether the individual had a weapon. Mrs. Peninger's son-in-law, Joseph Chambers, testified that he saw a husky man with long hair, wearing a hat or headband, running beside the McLamb's house. Mr. Chambers testified that the man had on a shirt but he could not describe it. Neither Mrs. Peninger nor Mr. Chambers could identify defendant as the individual they saw that night.

A magistrate who was present at McLamb's booking after his arrest, testified that after McLamb was released, two men, one of whom he recognized as defendant, approached him and asked if McLamb had been released. When he replied affirmatively, they immediately left the office. The magistrate places their inquiry between ten to fifteen minutes after McLamb left.

The State introduced a tape recording of calls received by the emergency 911 dispatcher. At 10:10 and 47 seconds p.m. a call was received, that said, "This is 915 Washington Street. Somebody is trying to kick my door in." Another call came in at 10:11 49 seconds p.m. which said, "There's somebody dead on the street. Washington Street and Monmouth Avenue." This call is consistent with testimony by Ricky New that he called the police and told them that someone had been shot at "Washington and Monmouth."

Defendant was picked up in his black El Camino by a deputy sheriff at about midnight that same night. A friend of defendant's, Richard Clayton, was with him. The deputy testified that defendant was wearing "a black tee-shirt, blue jeans, and a pair of brown boots. . . ." According to a photograph introduced as State's Exhibit No. 3 defendant had shoulder-length dark blond or light brown hair on the night in question.

From a judgment imposing a prison sentence of fifteen years for second degree murder, defendant appealed.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Francis W. Crawley, for the State.*

*Loflin & Loflin, by Thomas F. Loflin, III, and Dean A. Shangler, for defendant, appellant.*

HEDRICK, Chief Judge.

[1] Defendant first contends that the trial court erred by admitting hearsay testimony by a friend of decedent and by a police officer, that decedent, on the night of his death, told them that he was afraid of defendant. Assuming that the trial court erred in admitting this evidence, defendant has failed to show that the error was prejudicial. Even without this testimony the record discloses overwhelming amounts of evidence of the ill will that existed between the decedent and defendant, and that defendant had told the decedent earlier in the day that "If the bullet hit the car that is your ass."

[2] Secondly, defendant contends that his Sixth and Fourteenth Amendment rights to confront and cross-examine witnesses against him under the United States and the North Carolina Constitutions were denied by the trial court's admission of a tape recording of telephone calls made to the 911 emergency number. Defendant argues that the findings of fact made by the trial court after a voir dire hearing were not supported by competent evidence and a proper foundation was not laid for the admission of the evidence. Again, assuming that the trial court erred by admitting the tape recording, defendant has not shown that the admission was prejudicial. The recording only tended to show decedent's house was being broken into, shots were fired, and someone was dead at Washington Street and Monmouth Avenue.

No one was accused or implicated in the recording as being the perpetrator and defendant was in no way mentioned as being involved.

[3] Defendant next argues that the trial court erred in failing to grant his motions to dismiss and to set aside the verdict based on the insufficiency of the evidence and that the evidence is insufficient to support a conviction of second degree murder. Where a motion to dismiss is made the court must "consider all the evidence in the light most favorable to the State and . . . give the State the benefit of every reasonable inference to be drawn from it. However, if there is substantial evidence to support a finding that the offense charged has been committed and that defendant committed it, the motion to nonsuit should be denied whether the evidence be direct, circumstantial or both." *State v. Scott*, 296 N.C. 519, 522, 251 S.E. 2d 414, 416 (1979). Summarizing the facts in the present case, the State's evidence tends to show that on 20 October 1984 defendant argued with decedent and threatened him. At about 10:00 that night, Ricky New saw "Lewis Blake's car" pull up and park near decedent's home and his wife, Melissa, saw the driver, who had long blond hair and was wearing a dark tee-shirt, get out of the El Camino and walk towards decedent's home just minutes before decedent was killed. Mazelle Peninger heard shots fired and saw a man on decedent's back steps. Joseph Chambers also heard the shots and saw a long-haired man running beside decedent's home. Decedent ran from his house to the street where he collapsed, dying from a bullet wound. After decedent collapsed the El Camino did a three-point road turn and left hastily. Later that night, a deputy sheriff picked up defendant who was standing beside his black El Camino. At the time defendant had shoulder-length dark blond or light brown hair, and was wearing a dark tee-shirt. When this evidence taken all together is considered in the light most favorable to the State it is sufficient to raise an inference that defendant, angry with McLamb because the latter had shot and hit his El Camino, went to the magistrate's office and learned that McLamb had been released and had no weapon. The evidence is also sufficient to raise an inference that defendant accompanied by a friend drove to McLamb's home in the El Camino where it was observed by witnesses and that defendant broke into McLamb's house, fired several shots, that McLamb ran from his home, defendant fired another shot and hit

McLamb, and that McLamb died as a result of shots fired by defendant. We hold that this evidence is sufficient to support a verdict of guilty of second degree murder.

Next, defendant contends that the trial court erred in refusing to charge the jury in accordance with his requested special instructions designated in the record as 1) "reasonable doubt," 2) "inference may not be based upon inference," 3) "no presumption that owner of a vehicle was the driver," 4) "suspicion or conjecture insufficient to convict" and 5) "facts proved must be inconsistent with defendant's innocence." G.S. 15A-1232 provides as follows: "In instructing the jury, the judge shall not express an opinion as to whether or not a fact has been proved and shall not be required to state, summarize or recapitulate the evidence, or to explain the application of the law to the evidence." We find nothing in the law or evidence given in this case to require the judge to instruct the jury as requested by defendant. We find that the instructions given are full, fair and complete, and are free from prejudicial error. These assignments of error have no merit.

[4] Finally, defendant contends that the trial court erred by failing to find factors in mitigation and imposing the presumptive sentence. This argument is without merit. Since defendant was given the presumptive sentence, the trial court was not required to make findings in aggravation and mitigation. G.S. 15A-1340.4(b); *State v. Welch*, 69 N.C. App. 668, 318 S.E. 2d 4 (1984).

For the foregoing reasons, we hold that defendant had a fair trial free of prejudicial error.

No error.

Judge ARNOLD concurs.

Judge ORR dissents.

Judge ORR dissenting.

I cannot agree with the majority's decision that there was sufficient evidence to go to the jury. In *State v. Chapman*, 293 N.C. 585, 238 S.E. 2d 784 (1977), the Supreme Court reversed de-

fendant Chapman's conviction for secret assault on the grounds of insufficient evidence to submit to the jury.

The evidence in *Chapman* differed significantly from the case *sub judice* in two important aspects. In *Chapman* the defendant was identified as being within close proximity of the scene of the assault shortly before and after the incident. Furthermore, a twelve gauge shotgun was taken from the defendant by the police after the shooting. The gun's breech had a strong odor of gun powder and contained a shell of the same make as a spent shell later found at the scene. The spent shell was later found to have been fired from defendant's gun.

In the case *sub judice*, defendant Blake was not identified as being at the scene at the time of the shooting. The only evidence linking him to the scene was one witness who identified a black El Camino that in his opinion was "Lewis Blake's car." Three witnesses saw a person in the vicinity of the shooting, but did not identify the defendant as that person. Secondly, there was no weapon ever found.

In *Chapman* the Court stated:

> The most the State has shown is that the victim could have been shot by a shell fired from defendant's gun. There is nothing, other than an inference which could arise from mere ownership of the gun, that would tend to prove that defendant actually fired the shot. 'Beyond that we must sail in a sea of conjecture and surmise. This we are not permitted to do.' *State v. Minor*, 290 N.C. 68, 75, 224 S.E. 2d 180, 185 (1976). Even when the State's evidence is enough to raise a strong suspicion, if it is insufficient to remove the case from the realm of conjecture, nonsuit must be allowed. *State v. Chavis*, 270 N.C. 306, 154 S.E. 2d 340 (1967).

*Chapman*, 293 N.C. at 587-88, 238 S.E. 2d at 786.

I cannot see how the evidence in *Chapman* was insufficient to go to the jury yet the evidence in the case *sub judice* is sufficient as determined by the majority. Here there is no identification of the defendant at the scene of the crime and no weapon involved in the shooting linked to defendant. Based upon the Supreme Court's decision in *Chapman*, I think the evidence was insufficient to go to the jury and the conviction should be reversed.