STATE v. WEBSTER

[111 N.C. App. 72 (1993)]

No Error.

Judges JOHNSON and JOHN concur.

---

STATE OF NORTH CAROLINA v. MARY RUTH WEBSTER

No. 9111SC1101

(Filed 20 July 1993)

1. **Constitutional Law § 327 (NCI4th)— delay between arrest and trial—no speedy trial violation**

    Defendant's constitutional right to a speedy trial was not violated by a delay of sixteen months between her arrest on 30 November 1989 and her trial for murder beginning on 8 April 1991 where the case was calendared but not tried several times during the summer of 1990 but no explanation was given for those delays; jury selection began in September 1990 but the case was continued because of scheduling conflicts of the trial judge; the case was not heard in December 1990 because of concerns about trying the case piecemeal over the Christmas holidays; in January 1991 a new district attorney needed time to become familiar with defendant's case; defendant did not file her demand for a speedy trial until 28 January 1991; and all of defendant's witnesses were still available and she failed to show any loss of evidence caused by the delay. U.S. Const. amend. VI; N.C. Const. art. I, § 19.

    **Am Jur 2d, Criminal Law §§ 652-656.**

    **Accused's right to speedy trial under Federal Constitution —Supreme Court cases. 71 L. Ed. 2d 983.**

2. **Constitutional Law § 325 (NCI4th)— delays in trying case—no due process violation**

    Defendant was not denied due process by the prosecutor's calendaring of her murder case for trial ten times before it actually went to trial where there was no evidence that the prosecution purposefully caused the delays in order to obtain any advantage over defendant, and defendant failed to show that the delays resulted in actual prejudice to the defense of her case.

STATE v. WEBSTER

[111 N.C. App. 72 (1993)]

**Am Jur 2d, Criminal Law §§ 655, 656, 856, 859, 860, 863.**

**Accused's right to speedy trial under Federal Constitution — Supreme Court cases. 71 L. Ed. 2d 983.**

3. **Homicide § 304 (NCI4th)— second-degree murder—sufficient evidence to support submission**

The evidence supported the trial court's submission to the jury of a charge of second-degree murder of her husband after the court dismissed the charge of first-degree murder where the State's evidence tended to show that the victim was shot at close range but there were no fingerprints on the gun and no traces of lead, barium or antimony on the victim's hands; the wound was atypical of a self-inflicted wound; no handwipings were taken from defendant because she had been to the bathroom where she might have washed her hands; defendant was the beneficiary of the victim's life insurance policies; defendant and the victim argued about another woman and financial matters on the night in question; and the victim had told his mother that he was moving out of the trailer he shared with defendant. The jury could have found from the evidence that defendant intentionally and unlawfully killed her husband but that she acted without premeditation and deliberation.

**Am Jur 2d, Homicide §§ 470, 472; Trial §§ 723, 725.**

4. **Criminal Law § 571 (NCI4th)— absence of defendant during jury deliberations—mistrial not required**

The trial court did not err by failing to declare a mistrial when defendant was absent during the final two hours of the jury deliberations because her son had been killed in an automobile accident where the court informed the jury that defendant had been excused from the day's proceedings for good cause shown.

**Am Jur 2d, Trial §§ 1708, 1717.**

5. **Constitutional Law § 345 (NCI4th)— jury verdict in defendant's absence—error not prejudicial**

Any violation of defendant's right to be present at every stage of her trial by the trial court's acceptance of the jury's verdict in a second-degree murder case in the absence of defendant was not prejudicial where the court explained that

STATE v. WEBSTER

[111 N.C. App. 72 (1993)]

defendant was absent for good cause shown, and defendant's counsel was present and adequately represented her. U.S. Const. amend. VI; N.C. Const. art., I, § 23.

**Am Jur 2d, Criminal Law § 921.**

6. **Evidence and Witnesses § 2411 (NCI4th)— limiting number of character witnesses**

The trial court did not err in limiting the number of defense character witnesses to eight in a prosecution of defendant for the murder of her husband even though defendant contended that the issue of her truthfulness was crucial since she was the only witness who could testify concerning the events during the evening in question. N.C.G.S. § 8C-1, Rules 611(a) and 403.

**Am Jur 2d, Trial § 336.**

**Propriety and prejudicial effect of trial court's limiting number of character or reputation witnesses. 17 ALR3d 327.**

7. **Criminal Law § 1085 (NCI4th)— presumptive sentence—findings of aggravating and mitigating factors not required**

The trial court is not required to make findings of aggravating and mitigating factors when the presumptive sentence is imposed. N.C.G.S. § 15A-1340.4(b).

**Am Jur 2d, Criminal Law §§ 598, 599.**

Judge WELLS dissenting.

Appeal by defendant from judgment entered 10 May 1991 by Judge Robert H. Hobgood in Johnston County Superior Court. Heard in the Court of Appeals 1 February 1993.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Norma S. Harrell, for the State.*

*Narron, O'Hale and Whittington, P.A., by John P. O'Hale and Jacquelyn L. Lee, for defendant-appellant.*

LEWIS, Judge.

Defendant was convicted of second degree murder and given the presumptive sentence of fifteen years. She now appeals, alleging a violation of her right to a speedy trial and other errors.

STATE v. WEBSTER

[111 N.C. App. 72 (1993)]

Defendant presented evidence tending to show that the deceased, Melvin Braxton Webster, committed suicide. Defendant and Mr. Webster had been married for 23 years. In the weeks before his death, Mr. Webster had received two warnings at work and was concerned about losing his job. He had consulted a doctor one week prior to death regarding swollen lymph nodes in his neck. On the evening in question, a phone call from their son Dennis precipitated an argument between the Websters concerning whether or not defendant would go to Florida to visit him. They continued to argue until retiring for bed. Defendant slept on the couch while her husband went into the bedroom. According to defendant, upon being awakened a short time later by a thumping noise, she went into the bedroom, and discovered that her husband had been shot.

Defendant called her next door neighbor, Gary Wheeler, who went to the Webster residence, saw Mr. Webster, and had his wife call the authorities. He observed no blood on defendant's clothing or person.

Detective Kenneth Eatman arrived at the scene about 45 minutes after defendant first called Mr. Wheeler. He found a .38 caliber pistol on the bed near defendant's head. He did not take hand wipings from defendant because he had seen her go to the bathroom, where she could have washed her hands. No fingerprints were found on the gun. No significant amounts of barium, antimony, or lead were found on handwipings taken from Mr. Webster. The State's pathologist testified that the gunshot wound was atypical of a self-inflicted wound. Another expert testified that Mr. Webster's death could have been either a suicide or an accident.

Defendant testified that she did not shoot her husband, and presented several character witnesses who testified to her good reputation for truth and honesty. On 19 April 1991 defendant's son was killed in an automobile accident, necessitating her absence from the final hours of jury deliberation. The court denied defendant's motions for a mistrial.

The State presented evidence that the Websters had purchased a life insurance policy on Mr. Webster, with defendant as the beneficiary, and that in early 1989 Mr. Webster enrolled for supplemental life insurance through his employment. Several witnesses testified that Mr. Webster had been in a normal mood on the day, of his death. The evidence also indicated that the argument on the night in question concerned another woman as well as finan-

cial matters. Mr. Webster's mother testified that he told her he was moving out of the trailer and would see her Saturday, 11 November. This would have been the week after his death.

I.  Speedy Trial

[1]  Defendant first argues she was denied her constitutional right to a speedy trial under the Sixth Amendment to the United States Constitution, and Article 1, Section 19, of the North Carolina Constitution. About sixteen months elapsed between defendant's arrest and trial. According to defendant, the prosecution willfully caused the delay, resulting in prejudice to defendant and entitling her to a dismissal of the indictment with prejudice.

Defendant was arrested on 30 November 1989, and was indicted on 29 January 1990, two months after her arrest. Defendant requested voluntary discovery on 10 January. She filed a motion to continue in February 1990. Although the case was calendared for trial several times during the summer of 1990, no courtroom proceedings were held until 4 September 1990. No explanation was given for the summer 1990 delays. During the week of 4 September motions were heard and eight jurors were selected. Judge I. Beverly Lake, Jr., however, noted some scheduling conflicts and that the trial would probably last two weeks. Judge Lake continued the case over defendant's objection. The District Attorney testified that he was ready to proceed at that point. The case was not heard at the 10 December 1990 session due to concerns about trying the two-week case piecemeal over the Christmas holidays. In January 1991 a new District Attorney needed some time to become familiar with defendant's case. Defendant filed her demand for a speedy trial on 28 January 1991. The motion was denied and the case went to trial on 8 April 1991, two months and eleven days later. The defendant was given five days credit for time served awaiting trial.

Four factors must be weighed in analyzing speedy trial issues: "(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of [the] right to a speedy trial, and (4) [the] prejudice resulting from the delay." *State v. Willis*, 332 N.C. 151, 164, 420 S.E.2d 158, 163 (1992). The length of the delay is not determinative of the speedy trial issue. *State v. Pippin*, 72 N.C. App. 387, 392, 324 S.E.2d 900, 904, *disc. rev. denied*, 313 N.C. 609, 330 S.E.2d 615 (1985). The appropriate length of time is initially within the discretion of the trial judge, and the State is entitled

to an adequate period of time in which to prepare the case for trial. *Id.* The North Carolina Supreme Court has held that a delay of 22 months was not "of great significance," but merely constituted a triggering mechanism for further examination of the speedy trial issue. *State v. Jones*, 310 N.C. 716, 721, 314 S.E.2d 529, 533 (1984) (*quoting State v. Hill*, 287 N.C. 207, 214 S.E.2d 67 (1975)). The length of the delay in this case from arrest to trial was over 16 months.

Defendant has the initial burden of presenting a *prima facie* case that the delay was caused by the willful acts or negligence of the prosecution. *Pippin*, 72 N.C. App. at 391, 324 S.E.2d at 904. Defendant must show that the delay was unjustified and engaged in "for the impermissible purpose of gaining a tactical advantage over the defendant." *State v. Jones*, 98 N.C. App. 342, 344, 391 S.E.2d 52, 54 (1990). The State is not responsible for delays caused by defendant. *Pippin*, 72 N.C. App. at 393, 324 S.E.2d at 905. We note that no explanation is given for the summer 1990 delays in this case. Defendant has not presented any evidence that those delays were unjustified or purposefully engaged in by the State. Furthermore, the State was clearly not responsible for the September and December 1990 delays. They resulted from scheduling conflicts of the trial judge and the Christmas holidays. Finally, the new District Attorney was certainly entitled to familiarize himself with the case in January 1991.

The court may examine whether the right was asserted at an early stage of the proceedings, or whether it was raised merely as a matter of form at the trial. *State v. Joyce*, 104 N.C. App. 558, 569, 410 S.E.2d 516, 522 (1991), *disc. rev. denied*, 331 N.C. 120, 414 S.E.2d 764 (1992). In this case, defendant did not raise her speedy trial claim at an early stage of the proceedings, but waited more than a year after her arrest to do so.

The test used to determine whether or not defendant has been prejudiced by the delay is "whether significant evidence or testimony that would have been helpful to the defense was lost due to delay." *State v. Jones*, 98 N.C. App. 342, 344, 391 S.E.2d 52, 54-55 (1990). In this case defendant claims the delay disrupted her life, drained her financial resources, curtailed her association with other people in the community, and caused her anxiety as well as depriving her of liberty. As the State points out, however, all of defendant's witnesses were still available at the time of the

hearing on her motion to dismiss, and defendant had not shown any loss of evidence.

After balancing the four factors we conclude that defendant's right to a speedy trial was not violated in this case. The length of the delay was sufficient to trigger an examination of the speedy trial issue. There is no evidence revealing the reasons for the summer 1990 delays, nor is there evidence that defendant made any oral or written demand that her case be tried during the summer of 1990. The delays after 4 September 1990 were caused by the trial judge and not by the State. It was reasonable for a new district attorney to require some time to review the case in January 1991. Finally, we note that defendant has not shown any actual prejudice to the presentation of her defense.          .

II.  Prosecutor's Calendaring of Cases

[2]  Defendant argues the district attorney improperly calendared her case for trial ten times before it actually went to trial in April 1991, and alleges that this constituted "unreasonable and unjustified conduct for the purpose of deliberately and unnecessarily gaining tactical advantage over the defendant." The defendant only asked for one continuance throughout the entire period. Furthermore, the State failed to inform her whether or not she would be tried for her life. Defendant argues such conduct amounted to a denial of due process and entitles her to a dismissal of the indictment.                                        -

As the State points out, the record does not reveal the reasons for the delays which occurred prior to September 1990. Defendant has not shown any evidence indicating the prosecution purposefully caused the delays in order to obtain any advantage over defendant. Furthermore, according to *State v. McCoy*, 303 N.C. 1, 277 S.E.2d 515 (1981), "the *sine qua non* of a due process violation is actual prejudice to the defense of the case." *Id.* at 8, 277 S.E.2d at 522. Defendant has not shown the delays resulted in actual prejudice to the defense of her case. We find no error in the trial court's denial of this motion to dismiss.

III.  Dismissal of First-Degree Murder Charge

[3]  Defendant argues the trial court erred in submitting the charge of second degree murder to the jury after dismissing the charge of first degree murder, claiming a violation of due process because the evidence does not support a theory of second degree murder.

Defendant thus claims she is entitled to a dismissal of the murder charge in the indictment.

If the evidence only supports a finding of first degree murder a charge of second degree murder may not be submitted to the jury. *State v. Arnold*, 329 N.C. 128, 138-39, 404 S.E.2d 822, 829 (1991). Second degree murder is "the unlawful killing of another with malice, but without premeditation and deliberation." *State v. Spivey*, 102 N.C. App. 640, 649, 404 S.E.2d 23, 28 (1991). An indictment for murder includes both first and second degree murder. *Id.* Generally, the State's decision to abandon a first degree murder charge and proceed on the lesser included offense is not prejudicial to defendant, as long as there is evidence to support the lesser offense. *Id.* at 648-49, 404 S.E.2d at 28 (citation omitted).

Defendant relies on cases which state that a jury's possible failure to find first degree murder does not require instruction on second degree murder. *See, e.g., State v. Cummings*, 326 N.C. 298, 317, 389 S.E.2d 66, 77 (1990). The cases cited contain clear, undisputed evidence of first degree murder, such as lying in wait, *State v. Leroux*, 326 N.C. 368, 376, 390 S.E.2d 314, 321, *cert. denied*, 498 U.S. 871, 112 L. Ed. 2d 155 (1990), and a coldly calculated and planned killing, *Cummings*, 326 N.C. at 317, 389 S.E.2d at 77.

In the case at hand the State points out that there is no direct evidence of premeditation and deliberation. There is circumstantial evidence that the bullet wound was atypical of a self-inflicted wound, without traces of lead, barium or antimony on the deceased's hands. The deceased was shot at close range, defendant was the sole beneficiary of the life insurance proceeds, and the deceased may have been involved with another woman. While this evidence tends to show that defendant may have killed her husband, it does not necessarily lead to the conclusion that defendant first premeditated and deliberated his death. Furthermore, uncontradicted evidence indicates that defendant and the deceased argued earlier that evening. The jury could have found from the evidence presented that defendant intentionally and unlawfully killed her husband, but that she acted without premeditation and deliberation. The evidence thus supports a finding of second degree murder. We find no error in the trial court's instruction on second degree murder.

IV.   Insufficiency of Evidence

Defendant argues the trial court erred in denying her motion to dismiss at the close of all the evidence based on the insufficiency of the evidence. Defendant claims the State has not produced substantial evidence of the elements of the crime charged or that defendant was the perpetrator of the crime.

On defendant's motion to dismiss, the evidence, including circumstantial evidence, must be viewed in the light most favorable to the State, giving the State the benefit of every reasonable inference. *State v. Turnage,* 328 N.C. 524, 530, 402 S.E.2d 568, 572, *cert. denied,* 330 N.C. 200, 412 S.E.2d 64 (1991); *State v. Childress,* 321 N.C. 226, 362 S.E.2d 263 (1987). We find that the evidence, discussed above, was sufficient to go to the jury on the charge of second degree murder.

V.   Defendant's Absence on Final Day of Jury Deliberation

A.   Substantial and Irreparable Prejudice Warranting Mistrial

[4]   Defendant argues the court should have declared a mistrial because of conduct occurring outside the courtroom which substantially and irreparably prejudiced her case. N.C.G.S. § 15A-1061 (1988). Defendant bases this contention on the fact that she could not be present on the final day of jury deliberations due to the accidental death of her son. She argues her "sudden absence" must have resulted in substantial and irreparable prejudice.

The State points out that the court informed the members of the jury that defendant had been excused from the day's proceedings for good cause shown, and that the prosecutor also had been excused. We cannot see how defendant's absence at this stage of the proceedings, during the final two hours of jury deliberations, could have resulted in substantial and irreparable prejudice to her case. Defendant has not presented any persuasive arguments as to why her absence that day would have somehow affected the jury's deliberations. We find this argument to be completely without merit.

B.   Denial of Constitutional Right to be Present at Every Stage of Trial

[5]   Defendant also argues that the court denied her the constitutional right to be present at every stage of her trial by accepting the jury's verdict in her absence and by denying her motion for

**STATE v. WEBSTER**

[111 N.C. App. 72 (1993)]

appropriate relief. Defendant cites the Confrontation Clause from the Sixth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, as well as Article I, Section 23 of the North Carolina Constitution, which confers upon her the right to be present at every stage of her trial. *See State v. Robinson*, 330 N.C. 1, 409 S.E.2d 288 (1991).

We agree with the State that any error here was certainly harmless. N.C.G.S. § 15A-1443 (1988). The court had already explained that defendant was absent for good cause shown. At this stage of the proceedings defendant's presence could not have made a difference to the outcome of the trial. The jury had already reached its verdict. Defendant's counsel was present and able to adequately represent her.

VI. Character Witnesses for Defendant

**[6]** Defendant claims the court erred in limiting the number of defense character witnesses, and that this error resulted in a denial of due process. She argues that the issue of her truthfulness was crucial since she was the only witness who could testify as to the events on the evening in question. Thus, she should have been entitled to bolster her character for truthfulness and credibility as much as possible.

The trial court may control the production of evidence in order to avoid "needless consumption of time," and may exclude relevant evidence based on "considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C.G.S. § 8C-1, Rules 611(a) and 403 (1992). Our Supreme Court has specifically stated that a trial court, within its sound discretion, may limit the number of character witnesses. *State v. McCray*, 312 N.C. 519, 537, 324 S.E.2d 606, 618 (1985) (court only allowed defendant to present one of five character witnesses).

On the first day of defendant's evidence, she presented six character witnesses who testified to her reputation for truth and honesty. Upon the State's motion to exclude further character evidence, the court ruled it would allow only two more character witnesses, since any additional witnesses would be deemed cumulative. We find no error in the court's decision to limit the number of character witnesses. The court gave defendant sufficient opportunity to present character evidence through the testimony of eight witnesses.

VII.  Statutory Mitigating Factors

[7]  Defendant finally argues that the court should have made findings regarding aggravating and mitigating factors even though the court imposed the presumptive sentence upon her. According to N.C.G.S. § 15A-1340.4(b) (Cum. Supp. 1992), a judge need not make findings regarding aggravating and mitigating factors if imposing the presumptive term. However, defendant argues a presumptive sentence is inflexible and "disregards the nature of the offender," and that she should therefore be entitled to findings in mitigation. Defendant claims the judge's failure to do so was an abuse of discretion entitling her to a new sentencing hearing.

Defendant's argument is meritless. The court was not required to make findings in mitigation or aggravation under N.C.G.S. § 15A-1340.4(b). *See State v. Blake*, 83 N.C. App. 77, 82, 349 S.E.2d 78, 81 (1986), *aff'd*, 319 N.C. 599, 356 S.E.2d 352 (1987).

For the foregoing reasons, we find defendant received a fair trial, free from prejudicial error.

No error.

Judge COZORT concurs.

Judge WELLS dissents.

Judge WELLS dissenting.

On the issue of speedy trial, I respectfully dissent.

Prior to the trial at which she was convicted and sentenced, defendant filed a motion to dismiss for denial of a speedy trial. That motion was heard on 12 February 1991 by Judge Wiley F. Bowen and was determined as follows:

THIS MATTER coming before the undersigned Judge of the Superior Court of Johnston County upon defendant's motion to dismiss this cause on the grounds that she has been denied her constitutional rights to a speedy trial under the Sixth and Fourteenth Amendments to the Constitution of the United States and under Article I, Section 19 of the North Carolina Constitution, the Court, following an evidentiary hearing, makes the following

STATE v. WEBSTER

[111 N.C. App. 72 (1993)]

FINDINGS OF FACT:

1. The defendant was arrested on a warrant charging her with murder on or about November 13, 1989. On January 29, 1990, the defendant was indicted for first-degree murder by the Grand Jury of Johnston County.

2. The District Attorney's office placed this case on the trial calendar for the following week-long sessions of Johnston County Criminal Superior Court; February 12, 1990; March 12, 1990; April 2, 1990; July 9, 1990; July 30, 1990; August 13, 1990; September 4, 1990 and December 10, 1990.

3. Prior to February 12, 1990 session, the defendant filed a motion to continue. The defendant has filed no other motions to continue.

4. The September 4, 1990 session of criminal superior court was a special session scheduled by the Administrative Office of the Courts at the request of the District Attorney. This session began on Tuesday because Monday was Labor Day. On Tuesday, the State called this case for trial and jury selection began. On Wednesday morning, the Court, on its own motion, ordered the case continued, citing the anticipated length of the trial and the scheduling conflicts of the presiding judge, the Honorable I. Beverly Lake, Jr. The jury had not been impaneled. The case was continued over defendant's objection.

5. The former District Attorney for the Eleventh Prosecutorial District, Mr. John W. Twisdale, whose last term expired December 31, 1990, was called as a witness by the defendant and testified that he had placed this case on the calendar during the February, March, April, July and August sessions of court for the purposes of hearing pre-trial motions and in the hopes that a negotiated plea might be reached. He testified that the State was ready for trial on September 4, 1990. He further testified that after September 4, 1990, he was understaffed and did not have the personnel necessary to try this case.

6. On January 28, 1991, the defendant filed a written demand for a speedy trial. The defendant had made no demand for a speedy trial prior to that date although the defendant had objected to the continuance of this case during the September 4, 1990 session of court.

7. As a result of the charge pending against her, the defendant's employment has been disrupted, her financial resources have been drained, her association with people in the community has been curtailed, her liberty has been impaired, and she has suffered anxiety.

8. Despite the delays in the trial of this case, the Court finds that the defendant has not been deprived of any defenses available to her and that all potential witnesses for the defendant are still available.

Based upon the foregoing FINDINGS OF FACT, the Court concludes as a matter of law that any prejudice to the defendant caused by the delay in the trial of this case is not so great as to constitute a denial of her constitutional rights to a speedy trial.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that defendant's motion is denied.

In *State v. Pippin*, 72 N.C. App. 387, 324 S.E.2d 900, *disc. rev. denied*, 313 N.C. 609, 330 S.E.2d 615 (1985), we considered an appeal by the State from a trial court order dismissing the charges against defendant Pippin for denial of his constitutional right to a speedy trial. In *Pippin*, we carefully reviewed the law applicable in such cases. We need not repeat that discussion here, but based on the findings in Judge Bowen's pre-trial order in this case, I find *Pippin* to be directly on point and conclude that defendant's motion to dismiss for denial of her right to a speedy trial should have been granted.

First, the length of the delay in this case was significant: 494 days from arrest to trial (457 days in *Pippin*). It should not be overlooked that from the date of her indictment on 29 January 1990 until 4 September 1990, defendant was subject to being tried capitally.

Second, Judge Bowen's order clearly reflects either willful or neglectful delay by the State—or both—and arguably oppressive delay. The district attorney testified that he repeatedly calendared defendant's case for trial in hopes of obtaining a plea, clearly implying that he purposely and repeatedly delayed the trial of defendant's case. Additionally, it should not be overlooked that on one occasion, defendant was subjected to an aborted trial due to "scheduling conflicts" of the presiding judge.

Third, the record reflects that defendant asserted her right to a speedy trial (1) by appearing prepared for trial each time her case was calendared and by being present for one aborted trial, and (2) by a timely motion. At the time defendant made her motion for a speedy trial, she had been under arrest for murder for at least 15 months and under indictment for 13 months. Since her case had been repeatedly calendared by the State and not tried, it cannot be said that defendant's motion was not timely.

Fourth, Judge Bowen's order and the record reflect the requisite facts and degree of prejudice resulting from the delays.

For these reasons, the judgment below should be vacated.