STATE OF NORTH CAROLINA v. SAM EDWARD JONES

No. 898SC750

(Filed 1 May 1990)

1. **Constitutional Law § 51 (NCI3d) — delayed arrest — undercover investigation pending — seven-month delay not unreasonable**

   The trial court did not err in denying defendant's motion to dismiss based on a pre-arrest delay of seven months and three days where no arrest was made at the time of defendant's sale of cocaine to an undercover SBI agent in order to avoid exposing the agent and the confidential informant who accompanied him and in order to allow the undercover operation to continue for several more months, and the pre-arrest delay therefore was not unreasonable or for improper purposes but was rather a legitimate delay justified by the need to protect an ongoing undercover investigation.

   **Am Jur 2d, Arrest § 3.**

2. **Criminal Law § 66.16 (NCI3d) — suggestive photographic procedure — in-court identification of independent origin**

   The showing of only one photograph some seven months after the alleged crime occurred, after the witness had been notified that he would be receiving a photograph of the defendant and with the defendant's name written on the back, was impermissibly suggestive; however, evidence was sufficient to support the trial court's conclusions that the pretrial identification procedure did not create a substantial likelihood of irreparable misidentification and that the in-court identification was of independent origin based solely on the witness's observations at the time of the incident.

   **Am Jur 2d, Evidence § 371.**

3. **Criminal Law § 66.19 (NCI3d) — admissibility of identification testimony — voir dire conducted after testimony admitted — no error**

   Any error in conducting a voir dire hearing immediately after identification testimony was admitted rather than before was harmless in light of the trial court's determination that the in-court identification was admissible.

   **Am Jur 2d, Jury §§ 196, 212.**

STATE v. JONES

[98 N.C. App. 342 (1990)]

4. **Criminal Law § 73.1 (NCI3d) — hearsay statement — admission not prejudicial error**

    Because there was a sufficient independent basis for the identification of defendant other than erroneously admitted hearsay, defendant was not prejudiced by admission of the hearsay.

    **Am Jur 2d, Evidence § 493.**

5. **Criminal Law § 73.2 (NCI3d) — testimony not hearsay**

    An officer's testimony that an informant knew where defendant lived did not constitute hearsay since the witness and other local officers coordinated an undercover operation including the use of the informant, and it could therefore be inferred that the witness had personal knowledge concerning the informant's awareness of where defendant lived.

    **Am Jur 2d, Evidence § 493.**

APPEAL by defendant from judgment entered 17 March 1989 in WAYNE County Superior Court by *Judge I. Beverly Lake, Jr.* Heard in the Court of Appeals 8 February 1990.

On 28 January 1988 an undercover SBI agent, accompanied by a confidential informant, went to a house in Goldsboro in order to attempt to purchase illegal drugs. This attempt to buy drugs was part of an ongoing undercover operation in Goldsboro and Wayne County. At the house, the undercover agent bought what was later positively identified as cocaine from defendant.

Defendant was charged with two felonies: (1) possession with intent to sell and deliver a controlled substance and (2) sale of a controlled substance. He was also charged with a misdemeanor of keeping and maintaining a dwelling for the use and sale of a controlled substance. A jury found him guilty on all counts. Defendant was sentenced to a ten-year term on the first count and concurrent three- and two-year terms to begin at the expiration of the ten-year sentence. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Robert G. Webb, for the State.*

*Duke and Brown, by John E. Duke, for defendant-appellant.*

WELLS, Judge.

[1] Defendant first assigns as error the trial court's denial of his motion to dismiss based on a pre-arrest delay of seven months and three days.

The law regarding a defendant's rights with respect to events occurring prior to indictment is set forth in *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). In *Lovasco*, the United States Supreme Court reiterated its holding in *U.S. v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), that the Sixth Amendment right to speedy trial applies only after one is formally accused of a crime; however, the due process clause plays a limited role in protecting against oppressive delay with regard to events occurring prior to indictment or arrest. When making a due process inquiry into pre-indictment or pre-arrest delay, the court must consider the reasons for the delay as well as any prejudice to the accused. *Id.* These principles were recently applied by our Supreme Court in *State v. Goldman*, 311 N.C. 338, 317 S.E.2d 361 (1984).

In order to prevail on allegations of a constitutional due process violation of the right to a speedy trial, a defendant must show actual prejudice in the conduct of his defense and that the delay was unreasonable, unjustified, and engaged in for the impermissible purpose of gaining a tactical advantage over the defendant. *See Goldman, supra*, and *State v. McCoy*, 303 N.C. 1, 277 S.E.2d 515 (1981). In this case an undercover SBI agent bought cocaine from defendant in January 1988. In order to avoid exposing the agent and the confidential informant who accompanied him, and because the undercover operation was to last for several more months, no arrest was made at the time. On these facts the pre-arrest delay was not unreasonable or for improper purposes but was rather a legitimate delay justified by the need to protect an ongoing undercover investigation. Defendant's only allegation of prejudice concerns the ability of the undercover agent to identify defendant after a seven-month delay. The test for prejudice is whether significant evidence or testimony that would have been helpful to the defense was lost due to delay; therefore, we fail to see how this alleged weakness in the State's case prejudiced defendant. *See, e.g., State v. Dietz*, 289 N.C. 488, 223 S.E.2d 357 (1976) (A defendant must show that lost evidence or testimony would have been helpful to his defense). This assignment is overruled.

Defendant's next two assignments of error concern the in-court identification of defendant by SBI Agent Ransome. Defendant assigns as error the trial court's failure to conduct a *voir dire* prior to the in-court identification of defendant by Agent Ransome. Defendant also assigns as error the trial court's denial of his motion to suppress the in-court identification of defendant by SBI Agent Ransome. We first address the assignment of error concerning the suppression motion.

Defendant contends that the in-court identification should have been suppressed because it was tainted by the mailing of a photograph of defendant to Agent Ransome after defendant's arrest in September 1988. Defendant argues that showing Agent Ransome only one photograph with defendant's name written on the back was impermissibly suggestive.

Identification evidence must be excluded as violating due process where a pretrial identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *see also State v. Pigott*, 320 N.C. 96, 357 S.E.2d 631 (1987). If the facts of a given situation do not give rise to a substantial likelihood of irreparable misidentification then, despite the presence of impermissible suggestiveness in the photographic identification procedure, reversal is not required. *Simmons, supra; see also State v. Knight*, 282 N.C. 220, 192 S.E.2d 283 (1972). Factors the court must consider in evaluating the likelihood of irreparable misidentification include:

(1) the opportunity of the witness to view the criminal at the time of the crime;

(2) the witness' degree of attention;

(3) the accuracy of the witness' prior description;

(4) the level of certainty demonstrated at the confrontation; and

(5) the time between the crime and the confrontation.

*Pigott, supra.* Even in cases where the confrontation procedure may have been suggestive, the court must still determine whether under the "totality of the circumstances" the identification was reliable. *State v. Wilson*, 313 N.C. 516, 330 S.E.2d 450 (1985).

On *voir dire* Agent Ransome testified that on 28 January 1988 at approximately 7:00 in the evening he was taken to a house

in Goldsboro by a confidential informant. Agent Ransome had instructions to purchase cocaine from a man named Sam Jones. Agent Ransome had never seen Jones before, nor had he seen a picture of Jones prior to being taken to the house in Goldsboro. There were four black males present at the house. Agent Ransome was introduced to one of the men by the informant who said, "This is Sam Jones." Agent Ransome testified that he spent at most five minutes with the man introduced as Jones, but that the room where they met was only a "little dimmer" than the courtroom; he could see clearly; and, at one point, was less than a foot away from Jones. The agent further testified that he purposely focused his attention on defendant in order to describe him later. Approximately five minutes after the undercover cocaine purchase was completed, Agent Ransome was interviewed by his supervisor, John Rea. Agent Ransome told Rea what had happened and described the appearance of Jones. Agent Ransome then reviewed the notes taken by Rea for accuracy. The notes were subsequently transcribed and a report containing his account of the incident was provided to Agent Ransome. He used this report to refresh his memory while testifying at trial.

Shortly after defendant was arrested in September 1988, Rea mailed a single color photograph of defendant and a note saying "let me know" to Agent Ransome. Rea had contacted Agent Ransome in advance telling him to expect a photograph of Sam Jones. The name "Sam Jones" was written on the back of the photograph. Upon receipt of the photograph, Agent Ransome notified Rea that the photograph was that of the same person from whom he had made the undercover purchase of cocaine.

Agent Ransome also testified on *voir dire* that he recognized the person in the photograph because of the mental picture he had of him from 28 January 1988 and that he was "very sure" that defendant was the same person from whom he had purchased cocaine on that date. On *voir dire* Agent Ransome also testified as follows:

Q. What is your identification of the defendant based upon?

A. My seeing him on January 28, 1988, at his residence, the photograph and seeing him Tuesday morning in Court.

STATE v. JONES

[98 N.C. App. 342 (1990)]

Q. State whether or not at the time you saw the photograph you had a clear mental image of the defendant and could have recognized him without benefit of the photograph?

MR. DUKE: Objection.

THE COURT: Overruled.

A. Yes, sir.

At the conclusion of the *voir dire* hearing the trial court made findings of fact and conclusions of law. The trial court essentially concluded that the in-court identification was of independent origin based on what the witness saw at the time of the alleged "buy" and was not tainted by Agent Ransome's seeing the photograph. The trial court specifically concluded that no pretrial identification procedure impermissibly suggestive or conducive to irreparably mistaken identification had occurred. At the request of defendant, the trial court made an additional finding of fact to the effect that although "the witness testified that his identification was based on seeing the defendant on January 28, 1988, [and] that [while] his identification was influenced by the photograph, . . . that he had an independent recollection of the defendant over and beyond the photograph."

[2] The evidence and findings do not support the conclusion that the pretrial photographic identification procedure was not impermissibly suggestive. The showing of only one picture some seven months after the incident occurred, after the witness had been notified that he would be receiving a photograph of the defendant and with the defendant's name written on the back, was impermissibly suggestive.

Having determined that the pretrial photographic identification was impermissibly suggestive, we must next review whether, considering all of the circumstances, the impermissibly suggestive procedure gave rise to a "very substantial likelihood of irreparable misrepresentation." *See State v. Grimes*, 309 N.C. 606, 308 S.E.2d 293 (1983). Applying the necessary factors to the facts of this case, we conclude that the trial court's findings and conclusions that the pretrial identification procedure did not create a substantial likelihood of irreparable misidentification and that the in-court identification was of independent origin based solely upon Agent Ransome's observations at the time of the incident are adequately supported. The factors used to determine the likelihood of misiden-

tification from a suggestive identification procedure are the same factors used to determine whether an in-court identification was of "independent origin." *Wilson, supra.* Although Agent Ransome testified at one point that his identification was partially based on the photograph, in addition to seeing the defendant on 28 January 1988 and again in court in March 1989, he also stated that he was able to recognize the person in the photograph as defendant because of the mental picture he had formed on 28 January 1988. Based on the totality of the circumstances present in this case, the trial court properly concluded that Agent Ransome's in-court identification was of independent origin. Any discrepancies or contradictions in Agent Ransome's testimony go to its weight and were properly resolved by the trial court. *See, e.g., State v. Weimer,* 300 N.C. 642, 268 S.E.2d 216 (1980). This assignment is overruled.

[3] Defendant also contends that the trial court erred by allowing the in-court identification prior to holding a *voir dire* hearing. A *voir dire* examination to determine the admissibility of identification testimony should be conducted prior to the admission of the testimony. *State v. Stepney,* 280 N.C. 306, 185 S.E.2d 844 (1972). However, a defendant is not automatically prejudiced by a court's initial failure to conduct a timely *voir dire. See, e.g., State v. Edwards,* 49 N.C. App. 547, 272 S.E.2d 384 (1980). In this case a *voir dire* hearing was conducted immediately after the identification testimony was admitted and the trial court determined that the in-court identification was admissible. Under the circumstances, we find that any error with regard to the timing of the *voir dire* must be deemed harmless.

[4] In his next two assignments of error defendant contends that the trial court erred by allowing the State to introduce hearsay testimony on two occasions. In the first instance, defendant argues that the trial court erred in allowing the State to introduce hearsay testimony concerning the identity of defendant. On direct examination Agent Ransome was allowed to testify that the confidential informant introduced him to the defendant by saying "This is Sam Jones." The State admits in its brief that the elicited testimony is hearsay, therefore we must assume that this testimony was offered for the truth of the matter asserted. However, the admission of hearsay does not always require a new trial. *State v. Hickey,* 317 N.C. 457, 346 S.E.2d 646 (1986). The defendant must also show that there is a reasonable possibility that a different

result would have been reached at trial if the testimony had not been admitted. *Id.*

In this case the defendant has not met that burden. Agent Ransome identified defendant as the man from whom he bought drugs based upon defendant's physical characteristics, not upon his name. Because there was a sufficient independent basis for the identification of defendant other than the erroneously admitted hearsay, defendant was not prejudiced by its admission. This assignment is overruled.

[5] The second instance in which defendant contends hearsay was erroneously admitted occurred during direct examination of Sgt. Bell of the Goldsboro Police Department. In response to a series of questions explaining how Agent Ransome found defendant's house, Sgt. Bell testified that the informant "knew where he [defendant] lived." Defendant contends that allowing Sgt. Bell to testify as to what the informant knew constituted hearsay. We disagree. The statement to which defendant objects could perhaps be challenged as a matter outside Sgt. Bell's personal knowledge and therefore speculative. However, defendant does not make this argument. Even if defendant challenged the testimony on this basis, his argument would be without merit. Rule 602 of the North Carolina Rules of Evidence states that a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. N.C. Gen. Stat. § 8C-1, Rule 602 of the N.C. Rules of Evidence (1988). The commentary to Rule 602 provides that personal knowledge need not be explicit but may be implied from the witness's testimony. The record shows that Sgt. Bell and other local officers coordinated this undercover operation, including the use of this informant. It can therefore be implied that Sgt. Bell had personal knowledge concerning the informant's awareness of where defendant lived. This assignment of error is overruled.

Defendant also contends that the trial court erred by allowing the district attorney to question Agent Ransome with regard to how intently he had observed defendant during the undercover "buy." He contends this testimony was unnecessary and prejudicial. We disagree. A witness's opportunity to view the perpetrator and his degree of attention at the time of the crime are legitimate areas of examination. This assignment is also overruled.

Defendant next assigns error to Agent Ransome's testimony concerning the content of a note he received from John Rea along with the photograph of defendant. Defendant contends that this testimony violated the so-called "best evidence" or original document rule by placing into evidence the content of a writing without the admission of the writing itself. N.C. Gen. Stat. § 8C-1, Rule 1002 of the N.C. Rules of Evidence (1988). Agent Ransome was allowed to testify that the note said "Dwight, let me know." We agree that the note itself was the best evidence of its content; however, the testimony elicited did not prejudice defendant. This assignment is overruled.

In his final assignment of error defendant asserts that the trial court erred by limiting his right to cross-examine Sgt. Bell regarding his use of confidential informants and regarding information contained in a prior affidavit made by Sgt. Bell.

Cross-examination of an adverse witness is a matter of right; however, its scope is subject to appropriate control by the trial court. N.C. Gen. Stat. § 8C-1, Rule 611(a) of the N.C. Rules of Evidence (1988); *State v. Hosey*, 318 N.C. 330, 348 S.E.2d 805 (1986). In this case the trial court refused to allow counsel for the defense to ask Sgt. Bell about how frequently he used confidential informants who were also drug users. The State objected to the question on the basis of relevancy and the trial court sustained the objection. At defense counsel's request, Sgt. Bell was allowed to whisper his answer to the court reporter for the record. This conduct on the part of the trial court was proper and did not prejudice defendant.

Defendant also was not prejudiced by the trial court's ruling with regard to the affidavit. After hearing arguments from both sides outside the presence of the jury, the trial court also ruled that the affidavit in question was the best evidence of what it contained. Because defense counsel was attempting to establish the contents of the affidavit, the trial court did not err in requiring the document itself to be submitted. This assignment is overruled.

No error.

Judges COZORT and LEWIS concur.