STATE OF NORTH CAROLINA v. CLYDE EARNEST WILLIAMSON

No. COA00-982

(Filed 2 October 2001)

1. **Appeal and Error— preservation of issues—failure to object—no plain error argument**

Although defendant contends the trial court erred in an indecent liberties, crimes against nature, and statutory sex offenses case by allowing into evidence testimony regarding defendant's prior Florida conviction for lewd and lascivious behavior based on the fact that the testimony was allegedly inadmissible as repressed memory testimony without accompanying expert testimony, this argument was not preserved for review because: (1) defendant never objected to the introduction of the testimony on grounds that it was improper repressed memory testimony without the necessary accompanying expert testimony as required by N.C. R. App. P. 10(b)(1); and (2) defendant has failed to assert plain error.

2. **Evidence— prior crimes or acts—lewd and lascivious behavior—common plan or scheme—remoteness**

The trial court did not abuse its discretion in an indecent liberties, crimes against nature, and statutory sex offenses case by allowing into evidence testimony regarding defendant's prior Florida conviction for lewd and lascivious behavior, that occurred about ten years earlier, under N.C.G.S. § 8C-1, Rule 404(b) because the similarities between the incidents establish defendant's common plan or scheme when both acts involved: (1)

defendant befriending adolescent girls; (2) the girls spending significant amounts of time unsupervised with defendant on a daily basis; (3) the girls periodically spending the night with defendant and sometimes in the company of another adolescent girl; (4) the girls helping with chores around defendant's house but defendant did not pay them for their work; (5) defendant buying the girls gifts including toys; (6) defendant allowing the girls to drive his car and providing them with marijuana, alcohol and cigarettes while in his company; (7) defendant showing affection to both girls in the form of hugging and kissing them; (8) the sexual abuse occurring in defendant's home; (9) defendant showing pornographic videos to both girls; and (10) defendant instructing the victims to take showers before sexual activity, and defendant performing the same sexual acts on the victims.

**3. Evidence— pornographic videotape—testimony regarding content**

The trial court did not err in an indecent liberties, crimes against nature, and statutory sex offenses case by admitting into evidence a pornographic videotape seized by a detective and his accompanying testimony regarding the content of the video, because: (1) the detective's testimony establishing that the videotape was the same videotape recovered from defendant's bedroom laid the proper foundation for its admission, N.C.G.S. § 8C-1, Rule. 901(a); (2) the jury only viewed the video case making the victim's identification of the video as the one defendant played for her, and the detective's identification as the one seized from defendant's trailer, sufficient for its admission; and (3) there was no prejudicial error in light of previous testimony that the videotape was a "porno movie," as well as defendant's failure to object to such characterizations.

**4. Evidence— testimony regarding nude photograph of victim—photograph not offered into evidence**

The trial court did not err in an indecent liberties, crimes against nature, and statutory sex offenses case by allowing the victim's friend to testify that she saw a nude photograph of the victim in defendant's bedroom when the State did not offer the photograph into evidence, because: (1) although the photograph itself is the best evidence of its contents, defendant failed to show he was prejudiced by this testimony when the victim previously testified that defendant took nude photographs of her and that she brought her friend into defendant's bedroom and showed

STATE v. WILLIAMSON

[146 N.C. App. 325 (2001)]

her some of the nude photographs that defendant kept in his bedroom; and (2) the fact that the friend observed a nude photograph of the victim in defendant's bedroom was not a vital part of the State's evidence.

**5. Evidence— defendant hugged young sex victim excessively-corroboration**

The trial court did not err in an indecent liberties, crimes against nature, and statutory sex offenses case by admitting a detective's testimony that defendant hugged the victim excessively to corroborate the testimony of the mother of the victim's friend stating that she observed defendant hug the victim a couple of times, because: (1) the law does not require that the detective's testimony about the mother's statements must be in the same words; (2) the detective's testimony was corroborative of the mother's statements that she witnessed defendant hugging the victim; and (3) the trial court gave a limiting instruction that the detective's testimony was for the sole purpose of corroboration.

Appeal by defendant from judgments entered 24 February 2000 by Judge J. Marlene Hyatt in Jackson County Superior Court. Heard in the Court of Appeals 15 August 2001.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Anne M. Middleton, for the State.*

*Carolyn Clark for defendant-appellant.*

HUNTER, Judge.

Clyde Earnest Williamson ("defendant") appeals judgments and sentencing upon convictions of taking indecent liberties with a child, crimes against nature, and statutory sex offenses. We find no prejudicial error in the proceedings below.

The evidence presented at trial tended to establish that the victim, "Joannie," was fifteen years old in 1998 when she began spending time with defendant. Joannie, along with her father and sister, were assisting defendant with the building of a new house. Joannie helped defendant with such chores as mending walls, hanging sheetrock, and painting. Joannie testified that she spent virtually every day helping defendant around his house. During construction on his house, defendant resided in a nearby trailer.

Joannie testified that during this time she became friends with a fourteen-year-old girl named "Jeannie" who was also helping defendant with his house. Joannie testified that defendant would usually take everyone home for the night after work on his house was completed for the day. Within a couple of weeks of working for defendant, Joannie and Jeannie began returning to defendant's trailer after defendant took the others home. The three would listen to music and spend time outside. Sometimes defendant would take the girls home, and sometimes the girls would spend the night with defendant in his trailer. Joannie testified that she and Jeannie spent about two nights a week at defendant's trailer.

Joannie testified that within a few weeks of her spending nights with defendant, he began to act in a sexual manner towards her. Joannie testified that in the first incident with her, defendant instructed her to take a shower, which she did. Defendant then placed a towel on his bed and told Joannie to lay on the towel so that he could "check [her] for a yeast infection." Joannie testified that defendant then "had his tongue down near [her] private area" and that he also inserted his finger into her vagina "a couple of times."

Joannie testified regarding four separate occasions on which the same sequence of events occurred, although she could not remember if defendant had inserted his fingers into her vagina each time. Joannie stated that after each incident, defendant would get "one of his wipes" which he kept in his night stand and wipe her off. She further testified that about the same time that her first sexual incident with defendant occurred, she observed defendant engaging in the same conduct with Jeannie, instructing her to take a shower, stating that he must "check her for a yeast infection," and then performing oral sex on her. Defendant threatened that if Joannie ever disclosed the abuse, he would put Joannie's father in jail or send her back to Washington State from where she had moved.

Joannie testified that defendant took polaroid photographs of her "about every time [she and Jeannie] stayed the night." Joannie stated that in some of the photographs she was nude or partially clothed. She also testified that defendant kissed her a couple of times, took a video of her while she was taking a bath, and played a pornographic video entitled "With Love, Loni" for her and Jeannie.

During the times Joannie and Jeannie were with defendant, he provided the girls with wine coolers and cigarettes. Defendant also had the girls smoke marijuana "almost every time [they] stayed the

STATE v. WILLIAMSON

[146 N.C. App. 325 (2001)]

night." Although defendant did not pay the girls for any work performed on his house, defendant allowed the girls to drive his car, and he would take them to Wal-Mart and buy them jewelry, clothes, toys, underwear and bras. The girls were allowed to wear the underwear and bras when with defendant, but they were not permitted to take them home.

Joannie's friend, Alisha Wallace ("Alisha"), testified that she went to defendant's trailer with Joannie on various occasions. Alisha testified that on one occasion, she saw a nude photograph of Joannie on defendant's desk in his bedroom. Alisha also testified that defendant had hugged her and "rubbed up against [her]" and remarked that her breasts were "bigger than Joannie's." Alisha witnessed defendant hugging Joannie and saw him "grab her behind." Alisha testified that Joannie told her defendant took nude pictures of her and had a video of her. Joannie later told Alisha and her mother, Jackie Wallace, of the events which had transpired with defendant. Jackie Wallace notified the Department of Social Services.

The State also presented the testimony of Detective David Grant of the Jackson County Sheriff's Department regarding his interviews with Joannie and Alisha, as well as items he recovered pursuant to a search of defendant's trailer. These items included a box of "Summer's Eve Feminine Cleansing Cloths" recovered from defendant's night stand, "various articles of female undergarments," a nude photograph of Joannie, and a video entitled "With Love, Loni." In addition, Christa Farash ("Christa"), the victim in defendant's prior Florida conviction for lewd and lascivious behavior with a minor, testified about the events surrounding her sexual abuse.

Defendant testified on his own behalf, denying all allegations. On 24 February 2000, the jury returned verdicts of guilty on one count of taking indecent liberties with a child, four counts of crimes against nature, and four counts of statutory sex offense. Defendant appeals.

On appeal, defendant argues that the trial court erred in admitting the following evidence: (1) testimony regarding defendant's prior conviction for lewd and lascivious behavior with a minor; (2) the videotape "With Love, Loni" and accompanying testimony regarding its contents; (3) testimony regarding the contents of a photograph not entered into evidence; (4) Detective Grant's testimony regarding statements made to him by Jackie Wallace; (5) Alisha Wallace's testimony regarding defendant's behavior towards her; and (6) a photograph of Joannie clothed in a sports bra and shorts.

I.

**[1]** Defendant argues that the trial court erred in allowing into evidence testimony regarding defendant's prior Florida conviction for lewd and lascivious behavior involving witness Christa Farash. For the first time on appeal, defendant argues that the majority of Christa's testimony regarding defendant's sexual conduct towards her is inadmissible as "repressed memory" testimony without accompanying expert testimony. This Court has held that repressed memory testimony "must be accompanied by expert testimony on the subject of memory repression so as to afford the jury a basis upon which to understand the phenomenon and evaluate the reliability of testimony derived from such memories." *Barrett v. Hyldburg*, 127 N.C. App. 95, 101, 487 S.E.2d 803, 806 (1997).

Christa stated on *voir dire* that some of her memories regarding her sexual abuse perpetrated by defendant were brought to light through therapy aimed at helping her deal with the events. Following *voir dire*, defense counsel voiced his frustration with having to contend with evidence not originally presented at the prior Florida trial. However, counsel never objected to the introduction of Christa's testimony on grounds that it was improper repressed memory testimony without the necessary accompanying expert testimony. Rather, defense counsel stated that he was solely "requesting the court exclude [the evidence] under 404(b) in that the only thing it's going to do is attempt to set forth a propensity and attack my client's character." There was no discussion before the trial court of repressed memory testimony and its requirements for admission.

> Pursuant to Rule 10(b)(1) of the North Carolina Rules of Appellate Procedure, . . . "a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make" in order to preserve a question for appellate review.

*State v. Call*, 353 N.C. 400, 426, 545 S.E.2d 190, 206-07 (2001) (quoting N.C.R. App. P. 10(b)(1)) (holding defendant abandoned argument that testimony was "inherently unreliable" and violated his constitutional rights where he failed to argue such grounds to trial court). Appellate courts will not entertain an argument where the issue was not " ' "raised and determined in the trial court." ' " *Id.* at 426, 545 S.E.2d at 207 (quoting *State v. Nobles*, 350 N.C. 483, 495, 515 S.E.2d 885, 893 (1999)).

Moreover, because defendant has failed to assert that the introduction of Christa's testimony without accompanying expert testimony was plain error, this argument is not preserved for our review. *See id.*; N.C.R. App. P. 10(c)(4) (appellate court may review for plain error only where "the judicial action questioned is specifically and distinctly contended to amount to plain error"). We therefore only address defendant's argument that the evidence was improperly admitted under Rule 404(b), as such was the basis for defendant's objection at trial.

[2] The trial court in this case admitted Christa's testimony under Rule 404(b) of the Rules of Evidence to show intent and "that there existed in the mind of the defendant a plan, scheme, system, or design involving the crime charged." As a general rule, Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." N.C. Gen. Stat. § 8C-1, Rule 404(b) (1999). Such evidence may, however, "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." *Id.*

> [E]ven though evidence may tend to show other crimes, wrongs, or acts by the defendant and his propensity to commit them, it is admissible under Rule 404(b) so long as it also "is relevant for some purpose other than to show that defendant has the propensity for the type of conduct for which he is being tried."

*State v. Frazier*, 344 N.C. 611, 615, 476 S.E.2d 297, 299 (1996) (emphasis omitted) (quoting *State v. Bagley*, 321 N.C. 201, 206, 362 S.E.2d 244, 247 (1987)).

Defendant argues that admission of the evidence under Rule 404(b) was improper because insufficient similarities exist between the acts surrounding the prior conviction and the alleged acts perpetrated here, that the acts are too remote in time, and that the probative value of the evidence is substantially outweighed by its prejudice to defendant. We disagree.

In *Frazier*, our Supreme Court addressed the issue of admissibility of witness testimony offered to demonstrate the existence of a common plan or scheme by the defendant to sexually abuse adolescent female family members. *Frazier*, 344 N.C. at 615, 476 S.E.2d at 299. The Court noted that "[t]he test for determining whether such evidence is admissible is whether the incidents establishing the com-

mon plan or scheme are sufficiently similar and not so remote in time as to be more probative than prejudicial under the balancing test of N.C.G.S. § 8C-1, Rule 403." *Id.* (citing *State v. Boyd*, 321 N.C. 574, 577, 364 S.E.2d 118, 119 (1988)); *see also State v. Harris*, 140 N.C. App. 208, 212, 535 S.E.2d 614, 617 (test for admission of prior sex offenses to show common plan, scheme, system or design is two-part: ". . . 'whether the incidents are sufficiently similar; and second, whether the incidents are too remote in time'" (citation omitted)), *disc. review denied*, 353 N.C. 271, 546 S.E.2d 122 (2000).

The testimony in *Frazier* tended to prove that the defendant's prior acts of sexual abuse occurred over a period of approximately twenty-six years and in a similar pattern. *Frazier*, 344 N.C. at 616, 476 S.E.2d at 300. The Supreme Court noted that all of the victims were adolescents at the time defendant began his sexual assaults; that in each instance defendant slowly began touching the victim and gradually reached more serious abuse; that during the period of the abuse, defendant bought his victims gifts and gave them money; that he threatened each of them that if she revealed to anyone what he was doing, she would be sent away or suffer some other severe sanction; and that all of the victims lived with or near defendant during the course of the abuse. *Id.* The Court concluded that "this evidence presents a classic example of a common plan or scheme." *Id.; see also, Harris*, 140 N.C. App. at 212, 535 S.E.2d at 617 (acts sufficiently similar where "defendant befriended the women, took them to a secluded place, pinned the women down, became aggressive with them, sexually assaulted and raped them and afterwards acted like nothing had happened").

In the present case, the similarities between the incidents involving Christa and Joannie also establish defendant's common plan or scheme. Both acts involved defendant befriending adolescent girls. In each case, Christa and Joannie spent significant amounts of time unsupervised with defendant on a daily basis. Both Christa and Joannie periodically spent the night with defendant, and sometimes in the company of another adolescent girl. Both victims helped with chores around defendant's house, but defendant did not pay them for their work. In both instances, defendant bought the victims several gifts, including toys. In each case, defendant allowed the victims to drive his car and he provided them with marijuana, alcohol and cigarettes while in his company. Defendant showed affection to both Christa and Joannie in the form of hugging and kissing them. In both cases, the sexual abuse occurred in defendant's home. Defendant

showed pornographic videos to both Christa and Joannie. In both instances, defendant instructed the victims to take showers before sexual activity, performed oral sex on the victims, and put his finger inside their vaginas.

"It is not necessary that the similarities between the two situations rise to the level of the unique and bizarre." *State v. Aldridge*, 139 N.C. App. 706, 714, 534 S.E.2d 629, 635 (citing *State v. Stager*, 329 N.C. 278, 304, 406 S.E.2d 876, 891 (1991)), *disc. review denied*, 353 N.C. 382, 546 S.E.2d 114 (2000). "Rather, the similarities simply must tend to support a reasonable inference that the same person committed both the earlier and later acts." *Id.* As in *Frazier*, we hold that the evidence presented in this case "presents a classic example of a common plan or scheme." *Frazier*, 344 N.C. at 616, 476 S.E.2d at 300.

The *Frazier* court also rejected the defendant's argument that the testimony was too remote in time to be relevant or probative, given that the prior acts occurred over a time period of seven to twenty-seven years prior to the trial. *Id.* at 615, 476 S.E.2d at 300. The Court noted:

This Court has been liberal in allowing evidence of similar offenses in trials on sexual crime charges. . . . Subsequent to *Jones*, it has permitted testimony as to prior acts of sexual misconduct which occurred more than seven years earlier. In *State v. Shamsid-Deen*, 324 N.C. 437, 379 S.E.2d 842 (1989), a case tried prior to the effective date of the Rules of Evidence, we held that it was not error for the trial court to admit the testimony of sisters of the victim that their father had also sexually abused them. There, the defendant's prior sexual misconduct with the sisters occurred during a twenty-year period. Likewise, we recently held that a ten-year gap between instances of similar sexual misbehavior did not render them so remote in time as to negate the existence of a common plan or scheme.

*Id.* at 615-16, 476 S.E.2d at 300 (citations omitted).

"Significantly, our Supreme Court has been 'markedly liberal in admitting evidence of similar sex offenses by a defendant for the purposes now enumerated in rule 404(b).' " *State v. Blackwell*, 133 N.C. App. 31, 35, 514 S.E.2d 116, 119 (quoting *State v. Cotton*, 318 N.C. 663, 666, 351 S.E.2d 277, 279 (1987)), *cert. denied*, 350 N.C. 595, 537 S.E.2d 483 (1999). That Court has held that a ten-year gap between incidents

does not render evidence of the prior bad act too remote in time to be admissible under 404(b). *See State v. Penland*, 343 N.C. 634, 654, 472 S.E.2d 734, 745 (1996) ("[g]iven the commonality of the distinct and bizarre behaviors, the ten-year gap between the incidents did not 'negate[] the plausibility of the existence of an ongoing and continuous plan to engage . . . in such . . . activities' " (quoting *State v. Shane*, 304 N.C. 643, 656, 285 S.E.2d 813, 821 (1982))), *cert. denied, Penland v. North Carolina*, 519 U.S. 1098, 136 L. Ed. 2d 725 (1997); *see also*, *Blackwell*, 133 N.C. App. at 36, 514 S.E.2d at 120 (prior acts occurring seven and ten years prior not too remote to be considered relevant and admissible).

In the present case, defendant's trial for sexual crimes perpetrated against Christa occurred in July 1988. The events complained of in the instant case began occurring around June 1998, approximately ten years following defendant's prior conviction. The record further indicates that defendant spent at least one year in prison following his 1988 conviction. "It is proper to exclude time defendant spent in prison when determining whether prior acts are too remote." *State v. Berry*, 143 N.C. App. 187, 198, 546 S.E.2d 145, 154 (citing *Blackwell*, 133 N.C. App. at 36, 514 S.E.2d at 120), *disc. review denied*, 353 N.C. 729, —— S.E.2d —— (2001). We conclude the gap in time is not too remote to warrant admission of the evidence under Rule 404(b), given our Supreme Court's liberal treatment of admitting prior evidence of similar sexual offenses, and its express holding that a ten-year gap between incidents is not sufficiently remote in time to preclude admission under 404(b).

Nor is there merit in defendant's argument that the trial court should have excluded the evidence because its probative value was outweighed by its prejudice to defendant. Under Rule 403, evidence, although relevant, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (1999). "The question of whether evidence is unfairly prejudicial 'is a matter left to the sound discretion of the trial court.' " *State v. Chavis*, 141 N.C. App. 553, 564, 540 S.E.2d 404, 413 (2000) (quoting *State v. Haskins*, 104 N.C. App. 675, 680, 411 S.E.2d 376, 381 (1991), *disc. review denied*, 331 N.C. 287, 417 S.E.2d 256 (1992)). Defendant has failed to show an abuse of discretion. These assignments of error are overruled.

STATE v. WILLIAMSON

[146 N.C. App. 325 (2001)]

## II.

**[3]** Defendant next argues that the trial court erred in admitting into evidence a videotape seized by Detective Grant, and his accompanying testimony regarding the content of the video. Defendant argues (1) that the State failed to lay a proper foundation for admission of the videotape because no *voir dire* was conducted prior to its admission, and (2) that Detective Grant's characterization of the videotape as "pornographic" was inadmissible.

The videotape was a pornographic video entitled "With Love, Loni." Joannie identified the videotape at trial as the same videotape that defendant played for her and Jeannie. Joannie stated twice, without objection, that the videotape was a "porno movie." The videotape was admitted into evidence following the direct testimony of Detective Grant. Detective Grant identified the videotape inside the cassette case as the same videotape he recovered from defendant's bedroom pursuant to a search warrant. The videotape exhibited the title "With Love, Loni." Detective Grant further testified that he viewed the videotape, that it was "pornographic" in nature, and that it depicted "various sex acts between males and females."

Rule 901 provides that " '[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.' " *State v. Redd*, 144 N.C. App. 248, 252, 549 S.E.2d 875, 878-79 (2001) (quoting N.C.R. Evid. 901(a) (1999)). "Upon a proper foundation, videotapes, like photographs, are admissible at trial for either illustrative or substantive purposes." *State v. Mason*, 144 N.C. App. 20, 24, 550 S.E.2d 10, 14 (2001).

Moreover, the requirements for admission here differ from the requirements of laying a foundation for a videotape that actually depicts the actions of the victim or the defendant. *See, e.g., State v. Mewborn*, 131 N.C. App. 495, 498, 507 S.E.2d 906, 909 (1998). Rather, the videotape in this case is "real" evidence, or an object " 'offered as having played an actual, direct role in the incident giving rise to the trial.' " *State v. Bryant*, 50 N.C. App. 139, 141, 272 S.E.2d 916, 918 (1980) (quoting *State v. Harbison*, 293 N.C. 474, 483, 238 S.E.2d 449, 454 (1977)). "When real evidence is properly identified, it is, in general, freely admissible." *Id.* at 140-41, 272 S.E.2d at 918 (citations omitted). It must simply " 'be identified as the same object involved in the incident in order to be admissible' " and as not having undergone any material change. *Id.* at 141, 272 S.E.2d at 918 (citation omit-

ted). Authentification of real evidence " 'can be done only by calling a witness, presenting the exhibit to him and asking him if he recognizes it and, if so, what it is.' " *Id.* (quoting 1 Stansbury's North Carolina Evidence § 26 (Brandis rev. 1973)). Moreover, "[a]s there are no specific rules for determining whether an object has been sufficiently identified, the trial judge possesses, and must exercise, sound discretion." *Id.*

Defendant's assertion that the trial court was required to conduct *voir dire* prior to admitting the videotape is erroneous. Detective Grant's testimony, establishing that the videotape was the same videotape recovered from defendant's bedroom, laid the proper foundation for its admission. *See State v. Rael*, 321 N.C. 528, 533-34, 364 S.E.2d 125, 128-29 (1988) (detective's testimony that " 'playboy playmate workout' " videotape seized from defendant's home was same videotape being presented as State's exhibit sufficient to admit videotape to corroborate victim's testimony that defendant showed him videotape of people not wearing clothes).

We also reject defendant's argument that the videotape was not properly introduced because both Joannie and Detective Grant only "identified a video case" and not the actual contents of the videotape. In the same argument, however, defendant states that there is no "indication in the record that the video was shown to the jury in whole or in part." Taking defendant's statement as true, the jury only viewed the "video case," and therefore Joannie's identification of the video as the one defendant played for her, and Detective Grant's identification of the video as the one seized from defendant's trailer was sufficient for its admission.

Defendant also argues that Detective Grant's testimony regarding the contents of the videotape violated the "best evidence rule." "Rule 1002 of the North Carolina Rules of Evidence, commonly known as the 'best evidence rule,' provides that, '[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute.' " *State v. York*, 347 N.C. 79, 91, 489 S.E.2d 380, 387 (1997) (quoting N.C. Gen. Stat. § 8C-1, Rule 1002 (1992)).

Even if Detective Grant's statements should not have been admitted, we find no prejudicial error in light of previous testimony that the videotape was a "porno movie," as well as defendant's failure to object to such characterizations. *See State v. Campbell*, 133 N.C. App. 531, 540, 515 S.E.2d 732, 738 ("evidentiary errors are harmless unless

[a] defendant proves that absent the error, a different result would have been reached [at trial]"), *disc. review denied*, 351 N.C. 111, 540 S.E.2d 370 (1999); *State v. Townsend*, 99 N.C. App. 534, 537, 393 S.E.2d 551, 553 (1990) (quoting *State v. Brooks*, 83 N.C. App. 179, 191, 349 S.E.2d 630, 637 (1986)) ("[t]he settled law of this State, unchanged by the adoption of the North Carolina Rules of Evidence, is that '[w]here evidence is admitted over objection, and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost' "). These assignments of error are overruled.

### III.

[4] Defendant argues that the trial court erred in allowing Alisha Wallace to testify that she saw a nude photograph of Joannie in defendant's bedroom where the State did not offer the photograph into evidence. Defendant argues that Alisha's testimony violates the best evidence rule. Although we agree with defendant that the photograph itself is the best evidence of its contents, defendant has failed to show that he was prejudiced by Alisha's testimony that she observed the photograph in defendant's bedroom.

Joannie previously testified, without objection, that defendant took nude photographs of her, and that she brought Alisha into defendant's bedroom and showed her some of the nude photographs that defendant kept in his bedroom. Joannie also previously testified in detail regarding the contents of the photographs that she showed Alisha, without objection. In light of the fact that such evidence was already introduced, any error in the admission of Alisha's testimony did not prejudice defendant. *See State v. Jones*, 98 N.C. App. 342, 349, 391 S.E.2d 52, 57-58 (1990) (although note itself was "best evidence" of its contents, testimony regarding what note said did not prejudice defendant). Moreover, the fact that Alisha observed a nude photograph of Joannie in defendant's bedroom was "not a vital part of the State's evidence." *See In re Potts*, 14 N.C. App. 387, 390, 188 S.E.2d 643, 645 (best evidence rule not invoked where contents of evidence not in question and "not a vital part of the State's evidence"), *cert. denied*, 281 N.C. 622, 190 S.E.2d 471 (1972).

### IV.

[5] Defendant assigns error to the admission of Detective Grant's testimony corroborating the testimony of Alisha's mother, Jackie Wallace. Jackie testified that she observed defendant hug Joannie

"a couple of times." Detective Grant testified regarding statements Jackie made to him during his investigation and interview of her, including a statement that defendant hugged Joannie "excessively." The trial court gave a limiting instruction that Detective Grant's testimony was only for the purpose of corroborating Jackie Wallace's prior testimony. Defendant argues that Detective Grant's testimony that Jackie Wallace stated defendant hugged Joannie "excessively" was not corroborative of her prior testimony that defendant hugged Joannie "a couple of times."

"Evidence of an out-of-court statement of a witness, related by the in-court testimony of another witness, may be offered as substantive evidence or offered for the limited purpose of corroborating the credibility of the witness making the out-of-court statement." *State v. Ford*, 136 N.C. App. 634, 640, 525 S.E.2d 218, 222 (2000) (footnotes omitted). "This Court has long held that 'corroborative' means '[t]o strengthen; to add weight or credibility to a thing by additional and confirming facts or evidence.' " *State v. Brown*, 350 N.C. 193, 204, 513 S.E.2d 57, 64 (1999) (citations omitted) (holding that contested witnesses' testimony about prior conversations with other witnesses, "although not precisely identical to the original testimony, tended to strengthen and confirm the testimony of the first witnesses. As such, the secondary witnesses' statements constituted corroborating evidence supplementing and confirming the first witnesses' testimony"). " 'It is not necessary that evidence prove the precise facts brought out in a witness's testimony before that evidence may be deemed corroborative of such testimony and properly admissible.' " *Id.* (quoting *State v. Higginbottom*, 312 N.C. 760, 768, 324 S.E.2d 834, 840 (1985)).

The law does not require that Detective Grant's testimony about Jackie's statements be in the exact words used by Jackie. His testimony need only have tended to strengthen and confirm her testimony that she witnessed defendant hugging the victim. We hold that Detective Grant's testimony was indeed corroborative of Jackie's statements that she witnessed defendant hugging Joannie. In light of the trial court's limiting instruction that Detective Grant's testimony was for the sole purpose of corroboration, we find no error in the admission of the testimony.

We have carefully reviewed defendant's remaining arguments regarding the admission of Alisha's testimony that defendant hugged her and remarked that her breasts were "bigger than Joannie's," and

of a photograph of Joannie wearing a sports bra that defendant purchased for her. We conclude these arguments are without merit.

No error.

Judges WYNN and TYSON concur.