An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1150

NORTH CAROLINA COURT OF APPEALS

Filed: 15 July 2014

STATE OF NORTH CAROLINA

v.

Randolph County
No. 11 CRS 109

DONALD McCAIN SPINKS


Appeal by defendant from judgment entered 7 March 2013 by Judge V. Bradford Long in Randolph County Superior Court. Heard in the Court of Appeals 6 March 2014.

> *Roy Cooper, Attorney General, by Amy Kunstling Irene, Assistant Attorney General, for the State.*
>
> *Cheshire Parker Schneider & Bryan, PLLC, by John Keating Wiles, for defendant-appellant.*


DAVIS, Judge.


Donald McCain Spinks ("Defendant") appeals from his conviction of statutory rape of a person who is 13, 14, or 15 years old. On appeal, he argues that the trial court erred in (1) admitting evidence of a prior sex-related offense pursuant to Rule 404(b) of the North Carolina Rules of Evidence; and (2) calculating Defendant's prior record level without taking into

account prejudice resulting from a delay in Defendant's indictment. After careful review, we conclude that Defendant received a fair trial free from error.

**Factual Background**

The State presented evidence at trial tending to establish the following facts: The victim ("Emily")[1] was born in 1984. Emily was raised by her grandmother, and they lived at King Hill Apartments in Ramseur, North Carolina. Defendant, whom Emily called "Duck," was one of their neighbors and lived in the same apartment complex.

One evening in either December of 1997 or January of 1998[2], Emily, who was 13 years old, was taking out the trash by herself and encountered Defendant, who was 28 years old at the time. Emily and Defendant had previously had conversations about sex, and, on this occasion, Defendant accused Emily of being scared to have sex. Emily denied being scared. Thereafter, she entered Defendant's bedroom window and proceeded to have vaginal intercourse with him.

Emily subsequently sought medical treatment for a suspected urinary tract infection. During the course of the examination, Emily learned that she was pregnant. Emily eventually gave

---

[1] Pseudonyms are used throughout this opinion to protect the privacy of the minor children.

[2] The record is unclear as to the precise date on which this incident occurred.

birth to a daughter, "Amy," on 24 September 1998 when she was fourteen years old. Approximately two years and four months later, Emily and her grandmother filed an action for child support payments on 25 January 2001 with the Randolph County Department of Social Services ("DSS"). At the request of Emily and her grandmother, information relating to the difference in age between Emily and Defendant was not relayed by DSS to any law enforcement agency.

Ultimately, on 16 April 2007, Angie Polito ("Ms. Polito"), an investigator for Child Protective Services with DSS, became aware of the age difference between Defendant and Emily during the course of an investigation concerning Defendant with regard to a separate incident involving allegations of statutory rape of his stepdaughter, "Wanda." While the district attorney's office was preparing for the prosecution of Defendant in the statutory rape case involving Wanda, Ms. Polito's notes concerning the sexual encounter involving Defendant and Emily came to the attention of another investigator. The district attorney's office subsequently contacted the Randolph County Sheriff's Office, and Captain Derrick Hill ("Captain Hill") was appointed to investigate the case.

After interviewing Emily on 18 March 2011, Captain Hill instructed Detective Tracy Turner of the Randolph County Sheriff's Office to obtain DNA samples from Emily, Amy, and

Defendant. After obtaining these samples, DNA testing was conducted on them, and the test results indicated that the relative probability of Defendant being the father of Amy was 99.9999 percent.

On 16 May 2011, Defendant was indicted on one count of statutory rape of a person who is 13, 14, or 15 years old. A jury trial was held in Randolph County Superior Court on 4 March 2013.

At trial, the State presented evidence pursuant to Rule 404(b) that Defendant had a sexual relationship with his then stepdaughter Wanda when she was 12 years old — seven years and seven months after his sexual encounter with Emily. The trial court conducted a *voir dire* hearing upon Defendant's motion *in limine* to exclude testimony concerning Defendant's sexual abuse of Wanda. The trial court ruled that the evidence was admissible for the limited purposes of showing *modus operandi* or the absence of mistake pursuant to Rule 404(b). The trial court gave a corresponding limiting instruction to the jury.

Defendant was convicted of statutory rape of a person who is 13, 14, or 15 years old. Defendant was sentenced as a prior record level IV offender to 307-378 months imprisonment. Defendant gave notice of appeal in open court.

**Analysis**

**I. Admissibility of Wanda's Testimony**

Defendant's first argument on appeal is that the trial court's admission of Wanda's testimony about his sexual abuse of her violated Rules 404(b) and 403 of the North Carolina Rules of Evidence. We disagree.

Our Supreme Court stated the following in *State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012):

> For the purpose of clarity, we now explicitly hold that when analyzing rulings applying Rules 404(b) and 403, we conduct distinct inquiries with different standards of review. . . . We review *de novo* the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b). We then review the trial court's Rule 403 determination for abuse of discretion.

## A. Rule 404(b) Analysis

Rule 404(b) states, in pertinent part, that

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C.R. Evid. 404(b).

In applying Rule 404(b), this Court has held that

> [c]ases decided under N.C.R. Evid. 404(b) state a general rule of inclusion of relevant evidence of other crimes, wrongs, or acts by a defendant, subject to but one exception requiring its exclusion if its only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the

crime charged.

> Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

*State v. Houseright*, __ N.C. App. __, __, 725 S.E.2d 445, 447 (2012) (internal citations and quotation marks omitted).

However, while we construe Rule 404(b) as a general rule of inclusion, it is "constrained by the requirements of similarity and temporal proximity." *State v. Al-Bayyinah*, 356 N.C. 150, 154, 567 S.E.2d 120, 123 (2002) (internal citations and quotation marks omitted). In conducting this analysis, we bear in mind that "North Carolina's appellate courts have been markedly liberal in admitting evidence of similar sex offenses to show one of the purposes enumerated in Rule 404(b). Our Supreme Court has been very liberal in admitting evidence of similar sex crimes in construing the exceptions to the general rule." *State v. Thaggard*, 168 N.C. App. 263, 270, 608 S.E.2d 774, 780 (2005) (internal citations and quotation marks omitted).

This Court has made clear that "[i]t is not necessary that the similarities between the two situations rise to the level of the unique and bizarre. Rather, the similarities simply must tend to support a reasonable inference that the same person

committed both the earlier and later acts." *State v. Williamson*, 146 N.C. App. 325, 333, 553 S.E.2d 54, 60 (2001) (internal citations and quotation marks omitted), *disc. review denied*, 355 N.C. 222, 560 S.E.2d 366 (2002). Furthermore,

> it is clear that there are no bright line rules when considering the remoteness prong of the Rule 404(b) admissibility test. For example, when the evidence challenged by a defendant suggests an ongoing and repetitive course of conduct by that defendant, a longer period of time in which the defendant has allegedly been *continuing* the similar conduct tends to make the evidence more relevant, not less, for proving a common scheme or plan. . . . Furthermore, the more striking the similarities between the facts of the crime charged and the facts of the prior bad act, the longer evidence of the prior bad act remains relevant and potentially admissible for certain purposes.

*State v. Gray*, 210 N.C. App. 493, 507, 709 S.E.2d 477, 487-88 (2011), *disc. review denied*, 365 N.C. 555, 723 S.E.2d 540 (2012). Conversely, "remoteness in time may be significant when the evidence of the prior crime is introduced to show that both crimes arose out of a common scheme or plan; but remoteness is less significant when the prior conduct is used to show intent, motive, knowledge, or lack of accident." *State v. Hipps*, 348 N.C. 377, 405, 501 S.E.2d 625, 642 (1998), *cert. denied*, 525 U.S. 1180, 143 L.Ed.2d 114 (1999).

**1. Similarity between Prior Act and Charged Act**

After conducting a *voir dire* hearing based on Defendant's motion *in limine*, the trial court found that the prior sexual abuse described by Wanda and the alleged sexual abuse of Emily shared the following similarities: (1) both Wanda and Emily were females between the ages of 12 and 14; (2) Emily and Wanda were both African-American; (3) Defendant engaged in vaginal intercourse with both victims; (4) neither incident involved threats or the use of force; and (5) Defendant "verbally cajoled both girls into submitting . . . [to] sexual intercourse with him[.]" We also note the further similarity that both incidents took place in Defendant's residence.

Defendant argues that the incidents were dissimilar in the following ways: (1) Emily was a neighbor whereas Wanda was his stepdaughter; (2) Defendant "teased [Emily] about being scared to have sex" whereas Defendant "required [Wanda] to 'do a deal' when she wanted certain things;" (3) Wanda, unlike Emily, was a virgin; (4) Emily "voluntarily had sexual intercourse with him" whereas he "required [Wanda] to have sex with him;" (5) Emily only had sexual intercourse with Defendant once whereas Defendant "required [Wanda] to have sexual intercourse once a week over a period of approximately a year and eight months;" and (6) Emily "didn't see nothing wrong with it" whereas Wanda initially refused to tell her friends about the sexual encounters.

In *Houseright*, Rule 404(b) evidence was allowed to show a common scheme or plan on the part of the defendant in that case to engage in sexual activity with young girls. *Houseright*, __ N.C. App. at __, 725 S.E.2d at 449. The defendant engaged in repeated sexual activity with the victim over a two year period during which the victim was between 13 and 15 years old. *Id*. The State in *Houseright*, pursuant to Rule 404(b), sought to admit the testimony of another girl who stated at trial that the defendant had a sexual encounter with her when she was either 13 or 14 years old. *Id*.

Based upon these facts, we reasoned that "[the Rule 404(b) witness's] testimony as to her sexual encounter with defendant tends to make the existence of a plan or intent to engage in sexual activity with young girls more probable." *Id*. We therefore held "that [the Rule 404(b) witness's] testimony regarding a prior sexual encounter with defendant was properly admitted under N.C.R. Evid. 404(b) for the purpose of showing defendant's plan[.]" *Id*. at __, 725 S.E.2d at 450; *see also State v. Roberson*, 93 N.C. App. 83, 85, 376 S.E.2d 486, 487-88 (1989) (where victim was unrelated to defendant, one of State's Rule 404(b) witnesses was defendant's daughter, and the two girls were 12 and 6 years old respectively when defendant sexually assaulted them, Rule 404(b) witness's testimony fell within common plan or scheme exception under Rule 404(b)).

Here, the trial court carefully considered this issue after conducting a *voir dire* hearing and noted a number of similarities between Defendant's sexual conduct with Emily and Wanda. We agree that these similarities suffice for purposes of admissibility under Rule 404(b).

### 2. Temporal Proximity

Defendant relies heavily on *State v. Jones*, 322 N.C. 585, 369 S.E.2d 822 (1988), in arguing that the remoteness in time between his sexual abuse of Wanda and the sexual incident with Emily rendered the evidence as to Wanda inadmissible under Rule 404(b). In *Jones*, the North Carolina Supreme Court held that a seven-year lapse in time between the sexual offenses for which the defendant was on trial and the proffered Rule 404(b) evidence by a witness who testified that she too had been sexually assaulted by the defendant was too temporally remote to constitute a common plan or scheme, despite the acts being similar. *Id*. at 591, 369 S.E.2d at 825. However, since *Jones* was decided, the Supreme Court has made clear that there is no bright-line test for determining temporal proximity:

> This Court has been liberal in allowing evidence of similar offenses in trials on sexual crime charges. Subsequent to *Jones*, it has permitted testimony as to prior acts of sexual misconduct which occurred more than seven years earlier. In *State v. Shamsid-Deen*, 324 N.C. 437, 379 S.E.2d 842 (1989), a case tried prior to the effective date of the Rules of Evidence, we held that

> it was not error for the trial court to admit the testimony of sisters of the victim that their father had also sexually abused them. There, the defendant's prior sexual misconduct with the sisters occurred during a twenty-year period. Likewise, we recently held that a ten-year gap between instances of similar sexual misbehavior did not render them so remote in time as to negate the existence of a common plan or scheme.

*State v. Frazier*, 344 N.C. 611, 615-16, 476 S.E.2d 297, 300 (1996) (internal citations omitted).

In the present case, a gap of approximately seven years and seven months existed. Based on the case law discussed above, and in light of the similarities between Defendant's sexual abuse of Emily and Wanda, we are satisfied that the trial court's admission of Wanda's testimony under Rule 404(b) was proper.

### B. Rule 403

Defendant further contends that the trial court erred in determining under Rule 403 that the probative value of the Rule 404(b) evidence was not substantially outweighed by the danger of unfair prejudice. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C.R. Evid. 403. We "review the trial court's Rule 403

determination for abuse of discretion." *Beckelheimer*, 366 N.C. at 130, 726 S.E.2d at 159.

In the present case, the trial court — as discussed above — admitted evidence of Defendant's acts of sexual intercourse with Wanda under Rule 404(b) for the purpose of showing *modus operandi* and absence of mistake. The trial court then gave the jury a limiting instruction that it could only consider the evidence for those limited purposes. On these facts, we cannot say that the trial court abused its discretion. *See id.* at 133, 726 S.E.2d at 160-61 (holding that trial court did not abuse its discretion under Rule 403 in admitting evidence of defendant's prior sexual abuse where the Rule 404(b) evidence was probative of defendant's *modus operandi* and trial court gave jury limiting instruction regarding proper consideration of Rule 404(b) evidence).

## II. Calculation of Prior Record Level

Defendant's final argument is that the trial court erred in calculating his prior record level without taking into account prejudice accruing to him from the delay in charging him for his sexual abuse of Emily. He asserts that he was not indicted until 13 years after the incident involving Emily and that during this 13-year period he was convicted of possession with intent to sell or deliver cocaine, thereby causing his prior record level to be higher for sentencing purposes at trial than

it would have been if the case had been prosecuted before 2010 (the date of the drug-related conviction). Defendant argues that as a result of this set of events, his constitutional right to due process was violated.

The standard of review for constitutional questions is *de novo*. *Piedmont Triad Reg'l Water Auth. v. Sumner Hills*, *Inc.*, 353 N.C. 343, 348, 543 S.E.2d 844, 848 (2001). In order for a defendant to show that a pre-indictment delay violated his due process rights

> he must show both actual and substantial prejudice from the pre-indictment delay and that the delay was intentional on the part of the State in order to impair defendant's ability to defend himself or to gain tactical advantage over the defendant. Thus, in order to obtain a ruling that pre-indictment delay violated his due process rights, defendant must show actual prejudice in the conduct of his defense and that the delay was unreasonable, unjustified, and engaged in for the impermissible purpose of gaining a tactical advantage over the defendant.

*State v. Martin*, 195 N.C. App. 43, 47, 671 S.E.2d 53, 57 (2009) (internal citations and quotation marks omitted).

Defendant's primary contention is that had DSS contacted a law enforcement agency at the time that it first became aware of Defendant's sexual abuse of Emily, Defendant would have been tried before he was convicted of the 2010 drug-related offense such that the 2010 conviction would not have been on his record

for sentencing purposes. There are several problems with his argument.

First, Defendant incorrectly asserts that a department of social services represents the State in a law enforcement capacity. Such a position is foreclosed by our decision in *Martin*, 195 N.C. App. 43, 671 S.E.2d 53:

> Although defendant is correct that DSS is required to report evidence of abuse to the district attorney, both our general statutes and case law make it clear that DSS is not a law enforcement agency nor does it prosecute criminal cases. Therefore, any purported delay on the part of DSS cannot carry defendant's burden of showing any intentional act on the part of the state in order to impair defendant's ability to defend himself or to gain tactical advantage over the defendant.

*Id.* at 48, 671 S.E.2d at 58 (internal citations and quotation marks omitted). As such, Defendant has failed to show any intentional delay on the part of a State law enforcement agency or that any delay in his indictment was intended to impair his ability to defend himself at trial or to gain a tactical advantage over him.

Second, Defendant's 2010 conviction resulted from his own voluntary decision to commit a criminal offense. Thus, his enhanced record level is due to his own criminal conduct rather than any misconduct on the part of the State.

**Conclusion**

For the reasons stated above, we hold that Defendant received a fair trial free from error.

NO ERROR.

Judges CALABRIA and STROUD concur.

Report per Rule 30(e).